UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

MARLON O. EVANS,

        Petitioner,

        v.                             Case No. 09-C-0494

MICHAEL THURMER,

        Respondent.

---

DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING REQUEST FOR EVIDENTIARY HEARING, DISMISSING CASE, AND DENYING CERTIFICATE OF APPEALABILITY

      Marlon O. Evans filed this petition under 28 U.S.C. § 2254, asserting that his 2003 state court conviction and sentence were imposed in violation of the United States Constitution. Evans argues that trial counsel failed to investigate and call two alibi witnesses, present exculpatory letters from the alleged co-actors, and that the trial court erred in denying his motion to suppress an involuntary statement. For the reasons set forth below, the court will deny Evans's request for an evidentiary hearing, the petition for habeas corpus, and dismiss this case.

## FACTS

      In October of 2002, there was a string of armed robberies in the City of Milwaukee. Evans was charged with eight counts of armed robbery, party to a crime, along with four other men. Shortly before trial, Evans moved to suppress his statements as involuntary and obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The court conducted a *Miranda-Goodchild* hearing and found the testimony of the two detectives to be more

credible than Evans. At trial, one of the four men testified against Evans and the jury convicted Evans on six of the eight counts. The court sentenced Evans to thirty years imprisonment followed by fifteen years of extended supervision. Evans moved for postconviction relief arguing that trial counsel failed to present letters from the other men stating that he did not participate in the robberies. However, the circuit court denied the motion inasmuch as Evans did not produce the letters, affidavits or otherwise set forth the substance of their testimony. On direct appeal, the Wisconsin Court of Appeals affirmed, *State v. Evans,* 2005 WI App 176, and the Wisconsin Supreme Court denied review.

Evans returned to circuit court with the filing of a § 974.06 motion. Evans argued that counsel was ineffective in failing to call two alibi witnesses or to present the exculpatory letters of his co-defendants. However, the Milwaukee County Circuit Court denied the motion following a *Machner* hearing and the Wisconsin Court of Appeals affirmed. *State v. Evans*, 2007 WI App 251. Evans filed an additional postconviction motion asserting that two other witnesses would testify that one of the co-defendants was lying and that Evans was not involved. However, the court construed the motion as a request for reconsideration of the former § 974.06 motion and denied the same. The Wisconsin Court of Appeals found that Evans could not overcome *Escalona's* procedural bar because he was attempting to present "new" witnesses regarding "old" evidence. *State v. Evans*, 2009 WI App 27.

CONCLUSIONS OF LAW

In the pending petition, Evans argues that trial counsel was ineffective in failing to investigate and present Kimberly Coleman and Andrea Davis as alibi witnesses and five exculpatory letters. Evans further contends that his statements given to the Milwaukee

2

detectives were involuntary and therefore inadmissible. Based on his assertions, Evans seeks an evidentiary hearing so that the court may hear from the potential witnesses.

When reviewing a petition for writ of habeas corpus, the court applies a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997)). Indeed, a district court may not grant a state prisoner's petition with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Consequently, federal courts are usually limited to a deferential review of the reasonableness of a state court decision. *E.g., Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Whether something is "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* To this end, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. The relevant decision is that of the last state court to consider the merits of petitioner's claim. *See Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006).

Evans first argues ineffective assistance of trial counsel. The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right

3

. . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) (citations omitted). A party asserting ineffective assistance of counsel must establish two elements: counsel's representation was deficient and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

For the performance prong of the *Strickland* test, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The performance standard permits a wide latitude of attorney conduct, and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks deleted); *see also Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000). Judicial scrutiny is "highly deferential" and the court strongly presumes that counsel's conduct was reasonable. *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated from his or her perspective at the time; hindsight should not distort the evaluation. *Id.*

Once the prisoner establishes deficient performance, he must still demonstrate prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. For this to be shown, the "likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697.

In considering Evans's ineffective assistance claims, this court does not review the ineffective assistance claims in the first instance. Instead, it assesses whether the state appellate court's determination was contrary to or involved an unreasonable application of law. Evans argued below that trial counsel should have called his girlfriend, Kimberly Coleman, and his nephew's girlfriend, Andrea Davis, as alibi witnesses because they would have testified that he was not present for the robberies he was accused of committing on October 15 and 21, 2002. This issue was the subject of a *Machner* hearing on August 2, 2006, (Doc. 24-2 at Ex. HH.)

The Wisconsin Court of Appeals reasonably applied *Strickland* in finding that Evans was not prejudiced by the failure to call the potential witnesses because their proffered testimony would not have helped his defense or provided him with an alibi. (Doc. 19, Ex. J, ¶¶ 4-11.) In finding no prejudice, the court carefully reviewed the evidence with respect to each of the six armed robberies:

> ¶ 5 The first robbery was on October 15, 2002, around 7:00 p.m. At his trial, Evans testified that on October 15 he was at home all night. In affidavits attached to Evans's Wis. Stat. § 974.06 motion, Coleman and Davis claimed that they would have testified that on the night of October 15 they were with Evans at his house. While Coleman's and Davis's proffered testimony would have supported Evans's claim that he was at home when the October 15 robbery happened, it is unlikely that it would have changed the outcome of the trial in light of Evans's confession, which he does not challenge on appeal.
>
> ¶ 6 During Evans's cross-examination, the prosecutor questioned Evans about his statement to the police describing his involvement in the October 15 robbery. Evans does not explain how Coleman's and Davis's testimony would have aided his defense in light of his voluntary confession or the fact that Coleman could have, as discussed below, been impeached for procuring or fabricating at least two exculpatory letters from the alleged co-actors. He has not, therefore, established "prejudice" under the second aspect of the *Strickland* test.

5

¶ 7 The next three robberies occurred on the evening of October 21, 2002. Evans testified that on October 21 he was not home between 5:15 or 5:30 p.m. and 6:30 p.m. because he and several of those the State contended were complicit in the robberies went to the store. According to Evans, those alleged co-actors committed one of the robberies on the way home from the store, but he, Evans, was not involved. Evans denied that he was at the scene of the other two robberies.

¶ 8 Coleman averred that, except for a trip to a store from approximately 5:15 p.m. to 6:30 p.m., Evans was at home with her on the evening of October 21. Similarly, Davis, who arrived at Evans's house around 6:05 p.m., claimed that Evans came home around 6:30 p.m. As we have seen, however, Evans admitted he was involved in the crimes and, as also noted, does not challenge those confessions on this appeal. Accordingly, for the reasons expressed in ¶ 6, above, he has not established "prejudice" under the second aspect of the *Strickland* test.

¶ 9 The last two robberies happened on the evening of October 24, 2002. Evans testified that on October 24, he left the house to go to a store between 4:00 p.m. and 5:00 p.m. with four persons the State contended were complicit in the robberies. According to Evans, on the way to the store, the other men committed two robberies, but he was not involved. Coleman claimed that she would have testified that Evans left the house on October 24 to go to the store and that he told her:

> about nodding off in the back seat and being woke up when he heard someone yell there goes a car. After the incident, Marlon [Evans] told me, he told [one of the alleged co-actors] to take him back to his car . . . and on their way to his car, [the alleged co-actor] decided to rob somebody else.

Again, Evans admitted that he was at the scenes of the robberies. Accordingly, he was not prejudiced by his trial lawyer's failure to present Coleman and Davis. See *State v. Harp*, 2005 WI App 250, ¶ 16, 288 Wis.2d 441, 454-455, 707 N.W.2d 304, 311 ("'Since an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all.'") (quoted source and parentheses omitted).

(*Id*. ¶¶ 5-9 (footnote omitted).) As the state court properly concluded, the evidence of the alibi witnesses lacks probative value when weighed against Evans's voluntary confession

6

that he provided to law enforcement. *Id*. As such, he has not established that a jury would have reasonable doubt as to the outcome of his case should this "new" evidence be admitted. Thus, Evans has not shown how his trial was prejudiced by counsel's failure to present the testimony of Kimberly Coleman and Andrea Davis.

Similarly, the Wisconsin Court of Appeals properly applied *Strickland* in holding that the decision not to present the exculpatory letters written by Evans's co-defendants was reasonable trial strategy. (Doc. 17, Ex. J at 7.) While the letters state that Evans did not participate in the robberies, the Court of Appeals cited counsel's testimony that the letters were a "double-edged sword." One of the alleged co-actors testified at trial and counsel testified that he did not want anyone else implicating Evans. Moreover, he was concerned about the authenticity of the letters because two of the alleged co-actors told law enforcement that they did not write the letters but that Coleman (the alibi witness) drafted the letters. The Wisconsin Court of Appeals reasoned that if the letters were introduced, Evans's counsel would have had to call the co-actors to testify and then rehabilitate those witnesses. On the other hand, if the co-actor's testimony at trial was consistent with the letters, they would have been impeached by their statements to police that Evans was involved in the robberies. With the authenticity of the letters questionable and prior inconsistent statements to police, Evans cannot show that the outcome of his trial was prejudiced as a result of this deficiency.

Respecting Evans's prior statements made to two Milwaukee detectives, he maintains that the statements were involuntary and in violation of his Fifth Amendment right. To admit such statements at trial, the state must provide, by a preponderance of the evidence, that

7

the defendant was informed of his *Miranda* rights, understood them, knowingly and intelligently waived them, and that the statement was voluntary. *See Miranda*, 384 U.S. at 475, 478-479; *see also Collins v. Gaetz*, 612 F.3d 574, 585 (7th Cir. 2010).

If there is evidence that the defendant was "threatened, tricked, or cajoled" into waiving his right against self-incrimination, this does not constitute a voluntary waiver of his Fifth Amendment rights; however, any statements made freely and voluntarily are admissible in evidence. *Miranda*, 384 U.S. at 476, 478; *Chambers v. Florida*, 309 U.S. 227, 237-38 (1940) (stating that coercion can be mental and physical). In reviewing the voluntariness of a defendant's statement, the court considers factors such as age, education, intelligence, advisement of constitutional rights, length of detention, length of questioning, and use of physical punishment. *See e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Evidence that a defendant was held incommunicado unless he confessed to a crime constitutes coercion and makes the confession involuntary. *See Haynes v. Washington*, 373 U.S. 503, 514 (1963). Also, promises of leniency in exchange for a confession violate the Fifth Amendment. *See United States v. Villalpando*, 588 F.3d 1124, 1128-29 (7th Cir. 2009). If the defendant understands that he can refuse to talk to police and can ask for a lawyer, then the defendant has knowingly waived his right by providing a statement. *Collins*, 612 F.3d at 588 (stating that this is a "relatively low bar" for the government to clear). If a confession is made in violation of this Fifth Amendment protection, "state convictions involving the use of confessions" must be reversed. *Haynes*, 373 U.S. at 514 (quoting *Rogers v. Richmond*, 365 U.S. 534, 541 (1961)). This issue is decided in light of the attendant circumstances. *See, e.g.*, *Haynes*, 373 U.S. at 513.

The Milwaukee County Circuit Court held that Evans's confession was admissible because he knew of, understood, and waived his right against self-incrimination. (Doc. 24, Ex. Y at 41.) Nevertheless, Evans claims that he was not aware of this right because he did not know that counsel would be provided for him if he could not afford one. (Doc. 33 at 15.) This argument is rebutted by the fact that the lower courts previously determined that Evans was informed of his *Miranda* rights based on the testimony of two detectives whose testimony was determined to be credible during the *Miranda/Goodchild* hearing. (Doc. 17, Ex. D at 12.) Additionally, inasmuch as this was not Evans's first time in the criminal justice system, there was strong reason to conclude that he was aware of and understood his right against self-incrimination. (Doc. 17, Ex. D at 14.) Consequently, this court finds that the lower courts did not unreasonably apply federal law to the facts of Evans's case when they determined that Evans knew of, understood, and waived his right against self-incrimination when he confessed to law enforcement.

Further, Evans's claim that police coerced him into confessing to the robberies was not supported by sufficient evidence. (Doc. 33 at 15.) Evans alleged two forms of coercion: (1) law enforcement officers promised him probation if he cooperated, and (2) officers told him he would not be able to see his children unless he admitted to the robberies. (Doc. 33 at 15-16.) He maintained that he knew how to cooperate with law enforcement simply because he had heard about the robberies from co-defendant Derik Day. (Doc. 33 at 17.)

In *U.S. v. Huerta*, 239 F.3d 865 (7th Cir. 2001), the court held that Huerta's version of the facts in her case was not sufficient evidence to prove that her confession was coerced or involuntary. *U.S. v. Huerta*, 239 F.3d 865, 872 (7th Cir. 2001). In that case, Huerta raised

9

many issues concerning the voluntariness of her confession, including an allegation that police promised that she would be able to go home for Christmas and see her children if she confessed. *Id*. at 871-72. Previously, the lower courts held that the officer's version of the events surrounding Huerta's interrogation was more believable than Huerta's version. *Id*. at 872. The court also affirmed the lower court's finding that Huerta knowingly signed a waiver form advising her of her *Miranda* rights before she confessed. *Id*. The court noted that Huerta had "made no showing that the district court's determination was exceedingly improbable; she merely present[ed] a contradictory statement of facts. That is not enough." *Id*. Consequently, the court deferred to the lower court and held that Huerta knowingly and intelligently waived her *Miranda* rights when she confessed. *Id*.

Like *Huerta*, Evans presented a "he said, she said" argument, which does not overcome a lower court's finding that a confession was made voluntarily. The lower court in this case held that the officers' testimonies were credible at the *Miranda/Goodchild* hearing, at which time the officers stated they did not promise a lower sentence to Evans or threaten him with the inability to see his children to induce a confession. (Doc. 24, Ex. Y at 40-41.) Indeed, the officers allowed Evans to speak with his mother during a break from their questioning. (Doc. 24, Ex. X at 20.) Moreover, Evans admitted awareness that only a judge may sentence a defendant. (Doc. 24, Ex. Y at 35.) Similar to the defendant in *Huerta*, Evans signed a statement indicating that he "freely and voluntarily" made the statement and that "no threats or promises" were made to him in exchange for the statement. (Doc. 24, Ex. Y at 36-37.) Thus, there is insufficient evidence to support a finding that Evans's confession was made involuntarily due to police coercion. Moreover,

10

considering the attendant circumstances of the case, the court does not find that Evans's confession was made without knowledge of his *Miranda* rights, or that it was provided involuntarily with due regard for Evans's previous experience with and knowledge of the criminal system, this court is persuaded that he effectively waived his right against self-incrimination under the Fifth Amendment when he confessed to law enforcement. And because the lower courts did not unreasonably apply federal law to the facts of Evans's case, this court must deny Evans's claim that his confession was wrongly admitted at his trial. (Doc. 17, Ex. D at 14.)

The court reaches this conclusion having determined that there is no basis for conducting an evidentiary hearing. Earlier in this case Evans moved for an evidentiary hearing because the subpoenas for witnesses Andrea Davis, Kimberly Coleman, Derik Day, David Lang, and Lewis Wasserman were not served properly, and these individuals did not appear for his state postconviction motion hearing. However, this court cannot hold an evidentiary hearing unless Evans shows that, as pertinent to this case, his claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence" *and* that the facts underlying his claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found him guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). The court directed Evans to file a document stating exactly what he believes each of these witnesses would have testified to at trial. Those representations have been taken into account when reviewing the petition and the briefs in this matter.

Evans claims that, by no fault of his own, the subpoenas for Lang, Coleman, Davis, and Day were served improperly. (Doc. 14 at 8.) Regardless, he has not met his burden by establishing that a reasonable fact finder could have found him innocent based on these witnesses' potential testimonies. In his document attesting to what the witnesses would have said at trial, Evans states that the affidavits and corroborating testimonies of the witnesses would lead a reasonable jury to find he did not participate in, nor was present at, the robberies on October 15, 21, or 24. (Doc. 33 at 18; *see* Doc. 14.) However, as stated above, the authenticity and veracity of the statements and letters Evans wishes to present at an evidentiary hearing remain in question because they conflict with statements these witnesses provided to police. Thus, it is unlikely that having an evidentiary hearing would provide Evans with any relief, or that these omissions constituted a lack of a full and fair hearing.

Since the credibility of the testimony that Evans seeks to present at an evidentiary hearing is questionable, and has been reviewed by lower courts, Evans has not overcome the burden necessary to provide him with an evidentiary hearing. As discussed earlier in this decision, counsel had reason to omit the aforementioned pieces of evidence, and their inclusion at this time would not change the minds of a reasonable jury in his case. Hence, Evans's request for an evidentiary hearing will be denied.

As a final matter, Evans is required to secure a certificate of appealability to appeal this court's ruling dismissing his petition for writ of habeas corpus. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right." This has been interpreted to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While a petitioner need not show that his appeal will succeed, *Miller–El v. Cockrell*, 537 U.S. 322, 337 (2003), he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Id.* at 338 (citation omitted). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate. Fed. R. App. P. 22(b)(1)–(3).

The court concludes that reasonable jurists would not find the court's decision regarding *Strickland* or the admissibility of the statements to be debatable or incorrect. Consequently, the court will decline to issue a certificate of appealability. However, Evans may present his request to the Seventh Circuit Court of Appeals. Fed. R. App. P. 22(b). Now, therefore,

IT IS ORDERED that Marlon O. Evans's petition for writ of habeas corpus is denied.

IT IS FURTHER ORDERED that Evans's request for an evidentiary hearing is denied.

IT IS FURTHER ORDERED that this case is dismissed.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

Dated at Milwaukee, Wisconsin, this 30th day of June, 2014.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE